UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ANN MARIE KELLY,

                        Plaintiff,

                                             <u>MEMORANDUM & ORDER</u>
          -against-                          13-CV-1284(JS)(WDW)

NORTH SHORE-LONG ISLAND HEALTH SYSTEM,

                        Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:      Louis D. Stober, Jr., Esq.
                    Albina Kataeva, Esq.
                    Law Offices of Louis D.
                       Stober, Jr., LLC
                    350 Old Country Road, Suite 205
                    Garden City, NY 11530

For Defendant:      Christopher G. Gegwich, Esq.
                    Alexander Elliot Gallin, Esq.
                    Nixon Peabody LLP
                    50 Jericho Quadrangle
                    Suite 300
                    Jericho, NY 11753

SEYBERT, District Judge:

          Plaintiff  Ann  Marie  Kelly  ("Plaintiff")  brings  this

employment  discrimination  action  against  defendant  North  Shore-

Long  Island  Jewish  Health  System  ("Defendant"  or  "LIJ")  alleging

claims   of   discrimination,   hostile   work   environment,   and

retaliation  based  on  disability,  in  violation  of  the  Americans

with  Disabilities  Act  ("ADA"),  42  U.S.C.  §  12101  <u>et</u>  <u>seq.</u>,  and  the

New  York  State  Human  Rights  Law  ("NYSHRL"),  N.Y.  Exec.  Law  §  290  <u>et</u>

<u>seq.</u>  The  Complaint  also  asserts  state  law  claims  for  intentional

and negligent infliction of emotional distress.[1]  LIJ moves to dismiss the ADA and state law claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  LIJ also seeks dismissal of the NYSHRL claim for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  For the following reasons, LIJ's motion is GRANTED.

BACKGROUND

I.  Factual Background[2]

Plaintiff is a registered nurse who worked for LIJ as a part-time "field nurse" from February 2008 until her resignation on August 17, 2011.  (Compl. ¶¶ 15-16, 66.)  She also worked for Nassau Health Care Corporation ("NHCC") until her retirement from NHCC in April 2011.  (Compl. ¶¶ 18, 26.)

On March 26, 2011, Plaintiff fell and injured her back while on vacation in Mexico.  (Compl. ¶ 20.)  According to the Complaint, the back injury caused Plaintiff so much pain that she purchased morphine, which is legal to purchase and use in Mexico without a prescription.  (Compl. ¶ 21.)  On April 4, 2011, NHCC

---

[1] Plaintiff has voluntarily withdrawn her claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.; and 42 U.S.C. §§ 1983, 1985, 1986, and 1988.  (Pl.'s Opp. Br., Docket Entry 12, at 14 n.2.)

[2] The following facts are taken from Plaintiff's Complaint and are presumed to be true for the purposes of this Memorandum and Order.

subjected Plaintiff to a random drug test that returned a positive result for morphine sulfate. (Compl. ¶¶ 22, 24.) NHCC then reported Plaintiff to the Office of Professional Discipline (the "OPD"). (Compl. ¶ 25.)

Plaintiff alleges that "[a]fter receiving the positive test result, [she] wanted to take all possible steps to successfully continue her career as a nurse." (Compl. ¶ 28.) Thus, "[t]o address issues related to the test results and address any potential or perceived substance abuse issues that she may have unknowingly suffered from, [Plaintiff] entered an Employee Assistance Program at NHCC and the Kenneth Peters Rehabilitation Center in Syosset." (Compl. ¶ 29.) Plaintiff also joined a support group sponsored by Statewide Peer Assistance for Nurses and "voluntarily attended Alcoholics Anonymous meetings three times a week." (Compl. ¶ 30.) Additionally, Plaintiff voluntarily applied for a spot in the Professional Assistance Program ("PAP"), a program run by the State of New York that "assists professionals who have substance abuse problems but who have not harmed patients or clients." (Compl. ¶¶ 31-32.)

In April 2011, Plaintiff informed her supervisor at LIJ, Diane Asquino ("Asquino"), that she had tested positive for morphine sulfate at NHCC and that "she was receiving treatment for substance abuse issues . . . ." (Compl. ¶¶ 27, 37.) Plaintiff alleges that Asquino reported this to LIJ's Director of Nursing,

Barbara Maidhoff, who then relayed the information to Maria Covello ("Covello"), an employee in LIJ's human resources. (Compl. ¶¶ 38-39.)

On June 29, 2011, Covello "invited Plaintiff to a meeting on July 1, 2011 to learn the details of the PAP program . . . ." (Compl. ¶ 41.) Plaintiff then met with Covello and LIJ's Associate Executive Director of Human Resources, Robert Sabatino ("Sabatino"). (Compl. ¶ 44.) Plaintiff alleges that she "explained that she ha[d] remained sober for three months and explained her participation in the numerous programs to help with her recover [sic], including PAP." (Compl. ¶ 45.) Covello later called Plaintiff and informed her that she was being placed on administrative leave and that "she could no longer see her patients because they were reassigned." (Compl. ¶ 48.)

In early July 2011, OPD completed its investigation of NHCC's report of Plaintiff's failed drug test and "determined that there were no patient care concerns." (Compl. ¶ 49.) Thereafter, on July 12, 2011, Plaintiff went to LIJ to speak with Sabatino. (Compl. ¶¶ 50-51.) She asked him "what the length of her administrative leave would be and why she was so abruptly removed from her position." (Compl. ¶ 52.) According to Plaintiff, Sabatino stated,

> in sum and substance, that he was not aware of
> [Plaintiff's] "problem" prior to their July 1,
> 2011 meeting but [since he became aware of

it], he [had to] protect the public, even
though OPD already concluded that there were
no patient care concerns and [Plaintiff] was
not a threat to the public or her patients.

(Compl. ¶ 53.) That same day, Sabatino "confirmed via letter that
[Plaintiff] was assigned to administrative leave for an
undetermined period of time." (Compl. ¶ 54.) He also "stated
that if [Plaintiff] continued to make inappropriate phone calls to
Home Care Case Managers in reference to her job status, other
stricter measures would have to be put in place." (Compl. ¶ 54.)

On July 23, 2011, Plaintiff learned that she was accepted
into the PAP program and LIJ was notified. (Compl. ¶¶ 57-58.) On
August 11, 2011, Covello asked Plaintiff to meet with her and
Sabatino "to sign a Last Chance Agreement." (Compl. ¶ 60.)
According to the Complaint, the Last Chance Agreement "would
terminate [Plaintiff's] employment if she did not sign it within
eight days" and required her to enroll in PAP. (Compl. ¶¶ 61-62.)
Plaintiff also alleges that the Last Chance Agreement contained a
"full waiver and release of any and all claims that she may have
against LIJ for her July 2011 suspension . . . ." (Compl. ¶ 63.)
Plaintiff alleges that, because of the waiver and release,
Plaintiff "felt compelled to choose between her job or upholding
her rights" and she therefore refused to sign the Last Chance
Agreement and instead involuntarily resigned. (Compl. ¶¶ 65-66.)

II.  Procedural Background

On August 8, 2011, Plaintiff, proceeding pro se, dual-filed an administrative complaint with the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC") alleging discrimination by North Shore-LIJ Home Care Network ("LIJ Home Care")[3] based on age, gender, and disability.  (Compl. ¶ 59; Gegwich Decl. Ex. B.)  On November 8, 2011, Plaintiff, this time represented by counsel, dual-filed a second administrative complaint against LIJ Home Care with the NYSDHR and the EEOC.  (Compl. ¶ 8; Gegwich Decl. Ex. E.)  Like the initial complaint, the second complaint alleged that LIJ Home Care discriminated against Plaintiff on the basis of age, gender, and disability. (Gegwich Decl. Ex. E.)  However, the second complaint included a new allegation that LIJ Home Care retaliated against Plaintiff for her having filed the first administrative complaint. (Gegwich Decl. Ex. E.)

On February 3, 2012, the NYSDHR dismissed Plaintiff's initial complaint for lack of probable cause, (Gegwich Decl. Ex. C), and the EEOC subsequently adopted the NYSDHR's findings and issued a right-to-sue letter dated March 23, 2012, (Gegwich Decl. Ex. D).  On September 12, 2012, the NYSDHR dismissed Plaintiff's

---

[3] According to LIJ, LIJ Home Care is "a component of LIJ." (Gegwich Decl. ¶ 4.)

second complaint for lack of probable cause, (Gegwich Decl. Ex. F), and the EEOC subsequently adopted the NYSDHR's findings and issued a right-to-sue letter dated December 12, 2012, (Gegwich Decl. Ex. G).

Plaintiff then commenced this action on March 12, 2013. Plaintiff brings claims for discrimination and hostile work environment based on disability or "perceived substance abuse problems," in violation of the ADA and the NYSHRL. Plaintiff also alleges that LIJ retaliated against her for filing the first administrative complaint with the NYSDHR by forcing her "to either be terminated or sign a last chance agreement waiving all her rights to obtain redress for her wrongful and unlawful July 1, 2011 suspension." (Compl. ¶ 94.) The Complaint also alleges claims under New York law for intentional and negligent infliction of emotional distress. LIJ's motion to dismiss these claims is currently pending before the Court.

DISCUSSION

The Court will first address the applicable legal standards before turning to the merits of Defendant's motion.

I.   Legal Standards

    A.   Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v.

United States, 201 F.3d 110, 113 (2d Cir. 2000).  In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions.  See Morrison v. Nat'l Australia Bank, Ltd., 547 F.3d 167, 170 (2d Cir. 2008).

    B.   Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007); accord Harris v. Mills, 572 F.3d 66, 71–72 (2d Cir. 2009).  First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72.  Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss.  Iqbal, 556 U.S. at 679.  Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.; accord Harris, 572 F.3d at 72.

The Court is confined to "the allegations contained within the four corners of [the] complaint."  Pani v. Empire Blue

Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998).  However, this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

II.  Timeliness of ADA Claims

       LIJ first contends that Plaintiff's ADA claims should be dismissed because they are time-barred by the statute of limitations.  (LIJ's Br. to Dismiss, Docket Entry 9, at 3-4.) However, as discussed below, based on the record before it, the Court cannot determine as a matter of law that Plaintiff's ADA claims are time-barred.

       To be timely, an ADA claim must be filed in federal district court within ninety days of the plaintiff's receipt of a right-to-sue letter from the EEOC.  See 42 U.S.C. § 2000e-5(f)(1) (specifying that a Title VII action must be brought within ninety days of the claimant's notification of her right to sue); id. § 12117(a) (applying the Title VII limitations period to claims brought under the ADA); see also Tiberio v. Allergy Asthma Immunology of Rochester, 664 F.3d 35, 37 (2d Cir. 2011).  In the Complaint, Plaintiff alleges that this action is timely because

she received a right-to-sue letter from the EEOC on December 12, 2012 and then filed this action within ninety days of receipt of such letter. (Compl. ¶¶ 13-14.) However, as LIJ correctly notes, the letter Plaintiff received on December 12, 2012 relates to the second charge that Plaintiff filed with the EEOC. (Gegwich Decl. Ex. G.) As noted, Plaintiff, proceeding pro se, filed an initial charge with the EEOC on August 8, 2011 alleging discrimination due to disability. She subsequently retained counsel, who then filed the second charge on November 8, 2011, which was based on the same facts asserted in the initial charge, but added a claim that LIJ retaliated against Plaintiff for filing the initial charge. (Compl. ¶ 59; Gegwich Decl. Ex. E.)

LIJ argues that Plaintiff's ADA claim is untimely because Plaintiff did not file this action within ninety days of the right-to-sue letter for the initial charge. In support, LIJ submits a right-to-sue letter from the EEOC for the initial charge that is dated March 23, 2012. (Gegwich Decl. Ex. D.) In response, Plaintiff submits an affidavit and other documentary evidence suggesting that she did not receive this right-to-sue letter until January 7, 2013. (See Kelly Aff. ¶ 43; Kataeva Decl. Ex. A.) She therefore argues that she had until April 7, 2013 to commence this action and met this deadline by filing the Complaint on March 12, 2013. (Pl.'s Opp. Br. at 3.)

There are a couple of preliminary points. <u>First</u>, the parties have submitted documents and a sworn affidavit not referenced in or attached to the Complaint.[4] Because the Court will consider these documents in reaching its decision with respect to the timeliness of Plaintiff's Complaint, LIJ's motion to dismiss in this regard must be converted to one for summary judgment. <u>See</u> Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); <u>see also</u> <u>Wall v. Tow Sports Int'l</u>, No. 05-CV-3045, 2006 WL 226008, at *1 (S.D.N.Y. Jan. 31, 2006).[5]

---

[4] Specifically, the March 23, 2012 right-to-sue letter and Plaintiff's affidavit and other documentary evidence are not attached to or referenced in the Complaint.

[5] In <u>Wall</u>, the court converted a motion to dismiss a Title VII claim (which has the same statute of limitations as an ADA claim) for failure to commence within the statutory time period because the plaintiff submitted an affidavit and documentary evidence regarding the date he claimed to have received a right-to-sue letter from the EEOC. 2006 WL 226008, at *1. The court noted that a "district court must ordinarily give notice to the parties before converting a motion to dismiss to a motion for summary judgment," and that the defendant had notice because it should have recognized the possibility for conversion when it received the plaintiff's extraneous materials. 2006 WL 226008, at *1 n.1. Here, both parties have submitted documents outside of the Complaint and therefore invited the Court to convert this motion to one for summary judgment. Additionally, LIJ is not prejudiced by this conversion because it is not precluded from moving for summary judgment on the issue of timeliness at a later date.

Second, it is well-settled that where two EEOC charges relate to the same alleged acts, the plaintiff's time to file a claim in federal district court begins to run once the plaintiff receives the first right-to-sue letter. See, e.g., Daniel v. Long Island Hous. P'Ship, Inc., No. 08-CV-1455, 2009 WL 702209, at *6 (E.D.N.Y. Mar. 13, 2009). Here, there is no dispute that the two charges pertain to the same alleged acts of discrimination with the exception of the retaliation claim included in the second charge. Thus, notwithstanding the allegation in the Complaint that Plaintiff timely commenced this action by filing within ninety days of receiving the right-to-sue letter for second charge, if Plaintiff received a right-to-sue letter for the initial charge first and did not commence this action within ninety days of receiving that letter, then this action would be time-barred with respect to the shared allegations in the initial and subsequent charges. The question, then, is when Plaintiff received the right-to-sue letter for the initial charge. As discussed below, the Court finds that this question presents an issue of fact that prevents the Court from dismissing this action for untimeliness.

There are presumptions that "a notice provided by a government agency was mailed on the date shown on the notice" and that "a mailed document is received three days after its mailing." Id. (citing Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 525-26 (2d Cir. 1996). These initial presumptions may be rebutted,

however, by "sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail." Id. (quoting Sherlock, 84 F.3d at 526).

LIJ apparently attempts to invoke these presumptions by pointing to the fact that the right-to-sue letter for the initial EEOC charge is dated March 23, 2012. However, Plaintiff has filed a sworn affidavit that she did not receive the right-to-sue letter until January 7, 2013. (See Kelly Aff. ¶ 43.) Courts have held that a sworn affidavit alone is sufficient to rebut the presumption regarding the date of receipt. See, e.g., Wall, 2006 WL 226008, at *2. Additionally, Plaintiff has submitted documentary evidence supporting her claim--a letter dated January 11, 2013 from her then-attorney to the EEOC explaining that Plaintiff had received the right-to-sue letter for the initial charge on January 7, 2013 and requesting that the EEOC reissue the letter with a current date so as to avoid any statute of limitations issues. (Kataeva Decl. Ex. A.) If Plaintiff's version of the facts is true, then this action would be timely. But this is a question of fact that the Court cannot decide on summary judgment. See id.

Accordingly, LIJ's motion for summary judgment with respect to the statute of limitations is DENIED.[6]

Having found an issue of fact with respect to the timeliness of Plaintiff's Complaint, the Court will now turn to LIJ's alternative argument that dismissal is appropriate because Plaintiff has failed to state a plausible ADA claim. (LIJ's Br. to Dismiss at 4–15.)

III. Plaintiff's Disability Discrimination Claim

Plaintiff alleges that LIJ discriminated against her on the basis of disability or perceived disability. However, as discussed below, Plaintiff's claim must be dismissed because she has not plausibly pleaded that she is disabled or that LIJ regarded her as disabled.

The ADA prohibits discrimination against a "qualified individual with a disability because of the disability" in the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state a claim for discrimination under the ADA, a plaintiff must allege that: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an

_____

[6] To be clear, the Court has not converted the remainder to LIJ's motion into one for summary judgment.

adverse employment action because of [her] disability or perceived disability." Capobianco v. City of N.Y., 422 F.3d 47, 56 (2d Cir. 2005).

LIJ does not dispute that Plaintiff has adequately alleged that LIJ is covered by the ADA or that Plaintiff was qualified to perform the essential functions of the field nurse position. Rather, LIJ argues that dismissal is warranted because Plaintiff has failed to adequately allege (1) that she is disabled or that LIJ regarded her as disabled and (2) that she suffered an adverse employment action. Because, as discussed below, the Court finds that Plaintiff has not plausibly pleaded that she is disabled or was perceived as disabled, the Court does not reach the question of whether Plaintiff has pleaded an adverse employment action.

Plaintiff claims that "[t]he Complaint sufficiently alleges that [Plaintiff] was perceived to be disabled/disabled because she was a substance abuser, specifically a recovering alcoholic." (Pl.'s Opp. Br. at 4.) Under the ADA, the term "disability" means "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). Alcohol addiction is an impairment under the ADA. Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 46 (2d Cir. 2002) ("Alcoholism . . . is an 'impairment'

under the definitions of a disability set forth in the . . . ADA . . . .") (collecting cases); <u>Darcy v. City of N.Y.</u>, No. 06-CV-2246, 2012 WL 727770, at *3 (E.D.N.Y. Mar. 6, 2012) ("[A]lcoholism has been recognized as a disability within the meaning of the ADA." (citation omitted)). To qualify as disabled under the ADA, however, a plaintiff "must show that [she] was actually addicted to alcohol . . . in the past--as opposed to having been a casual user of either substance--<u>and</u> that this addiction substantially limited one or more of [her] major life activities. <u>Johnson v. St. Clare's Hosp. & Health Ctr.</u>, No. 96-CV-1425, 1998 WL 213203, at *6 (S.D.N.Y. Apr. 30, 1998) (emphasis added) (citing <u>Buckley v. Consolidated Edison Co. of New York</u>, 127 F.3d 270, 273 (2d Cir. 1997)); <u>see</u> <u>also</u> <u>Myshka v. City of New London Fire Dept.</u>, No. 08-CV-1835, 2010 WL 965741, at *5 (D. Conn. Mar. 15, 2010) ("Mere status as an alcoholic . . . does not necessarily imply a 'limitation' under the [ADA]." (quoting <u>Reg'l Econ.</u>, 294 F. 3d at 47)).

Here, although the Complaint suggests that Plaintiff is a recovering alcoholic, it does not state or plead any facts indicating that her alleged alcoholism limited one of her major life activities. Thus, Plaintiff has not plausibly pleaded that she is disabled within the meaning of the ADA. <u>See</u> <u>Johnson v. N.Y. Presbyterian Hosp.</u>, No. 00-CV-6776, 2001 WL 829868, at *4 (S.D.N.Y. July 20, 2001) (granting motion to dismiss ADA claim

because plaintiff did not "allege[ ] how his alcoholism has substantially interfered with his ability to perform any of his major life activities"), aff'd 55 F. App'x 25 (2d Cir. 2003); Baptista v. Hartford Bd. of Educ., No. 08-CV-1890, 2009 WL 2163133, at *6-7 (D. Conn. July 21, 2009) (same), aff'd 427 F. App'x 39 (2d Cir. 2011); see also McManamon v. Shinseki, No. 11-CV-7610, 2013 WL 3466863, at *9-10 (S.D.N.Y. July 10, 2013) ("[Plaintiff] has not alleged that his status as a recovering alcoholic substantially limits one of his major life activities, and thus has not plausibly pled a disability under the Rehabilitation Act.").

Plaintiff also fails to allege any facts that plausibly suggest that LIJ perceived Plaintiff to be a recovering alcoholic. In her opposition brief, Plaintiff claims the Complaint "specifically alleges" that Sabatino "was made aware of her problem with alcohol" at a July 1, 2011 meeting and that Sabatino placed Plaintiff on administrative leave "only hours later." (Pl.'s Opp. Br. at 5.) However, the Complaint is entirely devoid of any such allegation. Rather, the Complaint alleges that Plaintiff informed her supervisor that she had failed a drug test at NHCC and that she was receiving treatment for some unspecified "substance abuse issues." (Compl. ¶¶ 27, 37.) And although the Complaint alleges that Plaintiff began attending Alcoholics Anonymous meetings and that "LIJ was notified that [Plaintiff] was admitted into the PAP program," the Complaint stops short of alleging facts from which

it can be inferred that anyone at LIJ regarded Plaintiff as a recovering alcoholic. Plaintiff submits an affidavit that attempts to cure these pleading deficiencies but "[a] complaint cannot be modified by a party's affidavit or by papers filed in response to a dispositive motion to dismiss . . . ." <u>Caple v. Parman Mortg. Assocs. L.P.</u>, No. 11-CV-3268, 2012 WL 4511445, at *4 (E.D.N.Y. Oct. 1, 2012) (ellipsis in original) (quoting <u>Brownstone Inv. Grp., LLC v. Levey</u>, 468 F. Supp. 2d 654, 660 (S.D.N.Y. 2007)). Accordingly, LIJ's motion to dismiss Plaintiff's disability discrimination claim is GRANTED.

IV. <u>Hostile Work Environment</u>

Plaintiff further alleges that LIJ subjected her to a hostile work environment on the basis of her alleged disability, in violation of the ADA. Although the Second Circuit has declined to decide whether the ADA provides a basis for a hostile work environment claim, <u>see</u> <u>Farina v. Brandford Bd. of Educ.</u>, 458 F. App'x 13, 16-17 (2d Cir. 2011) ("Even assuming, <u>arguendo</u>, that the ADA provides a basis for a hostile work environment claim (an issue this Court has not yet decided) . . . ."), district courts in this Circuit, including this Court, have held that such claims are cognizable and that the standards for a Title VII hostile work environment apply, <u>see, e.g.</u>, <u>Forgione v. City of New York</u>, No. 11-CV-5248, 2012 WL 4049832, at *7, n. 6 (E.D.N.Y. Sept. 13, 2012); <u>Hendler v. Intelecom USA, Inc.</u>, 963 F. Supp. 200, 208 (E.D.N.Y.

1997).  In any event, Plaintiff's claim fails for three reasons.
First, the Court does not have jurisdiction to adjudicate the claim
because Plaintiff has failed to exhaust her administrative
remedies.  Second, Plaintiff fails to state a claim because, as
the Court has already determined, Plaintiff has not alleged that
she is disabled or was perceived as disabled under the ADA, a
required element of a hostile work environment claim.  Third,
Plaintiff has not pleaded facts that plausibly suggest that
Plaintiff was subjected to a hostile work environment.

A.    Exhaustion of Administrative Remedies

Plaintiff's EEOC charges were insufficient to exhaust
Plaintiff's administrative remedies with respect to a hostile work
environment claim.  "In order to properly exhaust a hostile
environment claim, a plaintiff must actually allege a hostile
environment in his EEOC charge."  Levitant v. Hilt N.Y. Waldorf
LLC, No. 10-CV-4667, 2012 WL 414515, at *7 (S.D.N.Y. Feb. 6, 2012).
The Second Circuit has held, however, that "claims that were not
asserted before the EEOC may be pursued in a subsequent federal
court action if they are reasonably related to those that were
filed with the agency."  Deravin v. Kerik, 335 F.3d 195, 200 (2d
Cir. 2003) (emphasis added) (quoting Legnani v. Alitalia Linee
Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001)).  A claim
is "'reasonably related if the conduct complained of would fall
within the scope of the EEOC investigation which can reasonably be

expected to grow out of the charge that was made.'" Id. at 200-01 (quoting Fitzgerald v. Henderson, 251 F.3d 345, 359-60 (2d Cir. 2001)).  The standard "is essentially an allowance of loose pleading" and "is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [she] is suffering."  Id. at 201 (citation omitted).

Here, the Court does not have jurisdiction to adjudicate Plaintiff's hostile work environment claim because it was not included in either of her two EEOC charges.  As LIJ aptly notes, Plaintiff did not check the appropriate box for harassment on the complaint form submitted for the first charge.  (Gegwich Decl. Ex. B.)  Additionally, Plaintiff retained counsel to prepare the second EEOC charge, and even that charge fails to raise allegations that would have alerted the EEOC that Plaintiff was claiming a hostile work environment.  (Gegwich Decl. Ex. E.)  Because Plaintiff "failed to make any reference to an uncomfortable atmosphere or hostile work environment" in either of her EEOC charges, the Court lacks jurisdiction to adjudicate such claim.  Hussey v. N.Y. State Dept. of Law, 933 F. Supp. 2d 399, 412 (E.D.N.Y. 2013); Jenkins v. St. Luke's-Roosevelt Hosp. Center, No. 09-CV-0012, 2009 WL 3682458, at *6 (S.D.N.Y. Oct. 29, 2009).

B.   Plausibility

Even if Plaintiff had exhausted her administrative remedies, however, Plaintiff's hostile work environment claim still must be dismissed because she fails to state a plausible claim under the ADA.  To state a claim for hostile work environment under the ADA, a plaintiff must allege "'that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of . . . her employment were thereby altered.'"  Giambattista v. Am. Airlines, Inc., --- F. Supp. 2d ----, 2014 WL 1116894, at *7 (E.D.N.Y. Mar. 20, 2014) (quoting Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002)). A plaintiff "'must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [disability].'"  Id. at *8 (quoting Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007)).

First, since the Court has determined that Plaintiff has not alleged that she is a qualified person with a disability or perceived disability under the ADA, Plaintiff's hostile work environment claim based on her alleged disability must also be dismissed.  Caruso v. Camilleri, No. 04-CV-167A, 2008 WL 170321,

at *28 (W.D.N.Y. Jan. 15, 2008) ("[A]s the court has determined that Plaintiff has not established that he is a qualified person with a disability under the ADA, Plaintiff's hostile work environment claim based on his alleged disability must also fail." (citations omitted)).

Second, even if Plaintiff had properly alleged disability, the Complaint does not come close to alleging that LIJ was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of Plaintiff's employment were thereby altered. Plaintiff bases her hostile work environment claim on three incidents that occurred between July 1, 2011 and August 11, 2011. (See Pl.'s Opp. Br. at 10-11.) Specifically, Plaintiff alleges that Sabatino (1) called her a "threat to the public"; (2) placed her on administrative leave for an indefinite period of time; and (3) sent her "accusatory and threatening letters warning her that if she contacted her case managers regarding her employment status, that further action against would be taken . . . ." (See Pl.'s Opp. Br. at 10.) However, "isolated, minor acts or occasional episodes do not warrant relief under a hostile environment theory." Forgione, 2012 WL 4049832, at *7 (citation omitted); see Trachtenberg v. Dept. of Educ. of City of N.Y., 937 F. Supp. 2d 460, 473 (S.D.N.Y. 2013) (dismissing hostile work environment claim because plaintiff's allegations regarding an "unimaginable work

environment," which included receiving letters from school principal containing "scurrilous charges," fell "well short of the sort of conduct that courts have found sufficiently pervasive to alter the conditions of the victim's employment" (internal quotation marks and citation omitted)); Ashok v. Barnhart, 289 F. Supp. 2d 305, 312 (E.D.N.Y. 2003) ("[I]mproper reprimands for alleged violations of firm policy are insufficient to establish a hostile work environment."); Ardigo v. J. Christopher Capital, LLC, No. 12-CV-3627, 2013 WL 1195117, at *4 (S.D.N.Y. Mar. 25, 2013) (dismissing claim based on offensive statements made on three occasions). Accordingly, Plaintiff's hostile work environment claim is DISMISSED.

V.    Retaliation Claim

Plaintiff also alleges that LIJ retaliated against her "for her complaints of unequal treatment and discrimination on the basis of disability/perceived disability," in violation of the ADA. (Compl. ¶ 91.) As discussed below, Plaintiff has failed to state a retaliation claim.

To state a plausible claim for retaliation under the ADA, a plaintiff must allege that: "(1) [she] engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against [her]; and (4) a causal connection exists between the

alleged adverse action and the protected activity." Treglia v. Town of Manilus, 313 F.3d 713, 719 (2d Cir. 2002).

Here, the alleged protected activity is Plaintiff's August 8, 2011 complaint with the NYSDHR and the alleged retaliatory act is LIJ's decision to offer Plaintiff the "Last Chance Agreement" on August 11, 2011. However, Plaintiff does not allege that LIJ was aware of Plaintiff's complaint with the NYSDHR before it offered the Last Chance Agreement. Therefore, Plaintiff fails to state a plausible retaliation claim and this claim is DISMISSED. See Jordan v. Forfeiture Support Assocs., 928 F. Supp. 2d 588, 609 (E.D.N.Y. 2013) (dismissing retaliation claim because, inter alia "the Complaint did not allege that defendant was aware of that protected activity or considered that protected activity in" committing alleged retaliatory act); Chang v. City of N.Y. Dept. for the Aging, No. 11-CV-7062, 2012 WL 1188427, at *7 (S.D.N.Y. Apr. 10, 2012) (same), report and recommendation adopted by 2012 WL 2156800 (S.D.N.Y. June 14, 2012); Wilson v. Reuben H. Donnelley Corp., No. 98-CV-1750, 1998 WL 770555, at *4 (S.D.N.Y. Nov. 2, 1998) ("The mere fact that plaintiff had earlier filed an EEOC complaint is not enough to support a contention that the subsequent conduct of defendants was a result of the earlier complaint.").

VI.  NYSHRL Claim

     Relying on the election of remedies doctrine, LIJ argues
that Plaintiff's NYSHRL claim must be dismissed for lack of subject
matter  jurisdiction  because  Plaintiff  filed  administrative
complaints with the NYSDHR.  (LIJ's Br. to Dismiss at 22-23.)  The
Court agrees with LIJ.

     The NYSHRL states:

          Any  person  claiming  to  be  aggrieved  by  an
          unlawful discriminatory practice shall have a
          cause  of  action  in  any  court  of  appropriate
          jurisdiction  .  .  .  unless  such  person  had
          filed a complaint hereunder or with any local
          commission  on  human  rights  .  .  .  provided
          that,  where  the  division  has  dismissed  such
          complaint  on  the  grounds  of  administrative
          convenience,  on  the  grounds  of  untimeliness,
          or  on  the  grounds  that  the  election  of
          remedies  is  annulled,  such  person  shall
          maintain  all  rights  to  bring  suit  as  if  no
          complaint had been filed with the division.

N.Y. Exec. Law § 297(9).  Thus, absent one of the three exceptions
above, § 297(9) "divests courts of jurisdiction over human rights
claims which have been presented to the DHR.'"  Jeter v. N.Y. City
Dept. of Educ., 549 F. Supp. 2d 295, 302 (E.D.N.Y. 2008) (quoting
Hamilton v. Niagara Frontier Transp. Auth., No. 00-CV-0300, 2007
WL 2241794, at *11 (W.D.N.Y. July 31, 2007); see also York v.
Assoc. of the Bar of the City of N.Y., 286 F.3d 122, 127 (2d Cir.
2002); Moodie v. Fed. Reserve Bank of N.Y., 58 F.3d 879, 884 (2d
Cir. 1995) ("[A] state law depriving its courts of jurisdiction

over a state law claim also operates to divest a federal court of jurisdiction to decide the claim.")).

Plaintiff argues that § 297(9) does not divest this Court of jurisdiction over her NYSHRL claim because "[u]pon filing her initial complaint with the NYSDHR, pro se, plaintiff did not allege violations of the New York State Human Rights Law." (Pl.'s Opp. Br. at 12.) This argument is perplexing, however, since the first page of both administrative complaints Plaintiff filed with the NYSDHR state, "I, Ann Marie Kelly, . . . charge [LIJ Home Care] with an unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) . . . ." (Gegwich Decl. Exs. B, E.) Contrary to Plaintiff's assertion, it is clear that Plaintiff presented her NYSHRL claim to the NYSDHR, which subsequently issued "No Probable Cause" determinations for both administrative complaints. (Gegwich Decl. Exs. C, F.) Accordingly, Plaintiff's decision to file these administrative complaints divests this Court of subject matter jurisdiction over the NYSHRL claim and this claim is DISMISSED. See Sicular v. N.Y. City Dept. of Homeless Servs., No 09-CV-0981, 2010 WL 423013, at *28 (S.D.N.Y. Feb. 4, 2010) ("[W]hen the administrative forum makes a final determination and issues a 'No Probable Cause' determination, plaintiff's NYSHRL . . . claims are barred from being relitigated in a subsequent civil action in federal court." (citations

omitted)), <u>report and recommendation adopted by</u> 2010 WL 2179962 (S.D.N.Y. May 28, 2010), <u>aff'd</u> 455 F. App'x 129 (2d Cir. 2012).

VII. <u>Intentional and Negligent Infliction of Emotional Distress</u>

Plaintiff also alleges claims for intentional and negligent infliction of emotional distress under New York law.

Intentional infliction of emotional distress has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." <u>Howell v. N.Y. Post Co.</u>, 81 N.Y.2d 115, 121–22, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993) (explaining that liability is found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"). The Complaint is entirely devoid of any facts alleging these elements and "New York courts do not, as a rule, extend the tort of intentional infliction of emotional distress to employment discrimination cases . . . ." <u>Virola v. XO Commc'n</u>, No. 05-CV-5056, 2008 WL 1766601, at *21 (E.D.N.Y. Apr. 15, 2008); <u>see also</u> <u>Wilson v. Am. Broad. Co.</u>, No. 08-CV-1333, 2009 WL 8743559, at *8 (S.D.N.Y. Mar. 31, 2009) ("In the rare instances where a court has found a complaint sufficient to state a claim for intentional infliction of emotional distress in the employment context, the

claims have tended to accompany allegations of sex discrimination or battery."). Accordingly, Plaintiff's intentional infliction of emotional distress claim is DISMISSED.

Finally, Plaintiff's negligent infliction of emotional distress claim "is precluded by New York Workers' Compensation Law, which provides the exclusive remedy for negligence claims against an employer." Dansler-Hill v. Rochester Inst. of Tech., 764 F. Supp. 2d 577, 585 (W.D.N.Y. 2011) (citing N.Y. Workers' Comp. Law §§ 11, 29(6)). Accordingly, this claim too is DISMISSED.

VIII. Leave to Replead

The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); see also Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). "However, a district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).

Here, the Court finds that Plaintiff should be given one final opportunity to plead her disability discrimination and retaliation claims under the ADA. However, since amendment of Plaintiff's hostile work environment, NYSHRL, and infliction of

emotional distress claims would be futile, these claims are DISMISSED WITH PREJUDICE and Plaintiff may not replead them.

<u>CONCLUSION</u>

For the foregoing reasons, LIJ's motion to dismiss is GRANTED with leave to replead consistent with this Memorandum and Order. If Plaintiff wishes to replead, she must do so within thirty (30) days of the date of this Memorandum and Order. If she fails to do so, the entire action will be dismissed with prejudice.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    June   22  , 2014
          Central Islip, NY