UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ANNE MARIE KELLY,

                    Plaintiff,

                                        <u>MEMORANDUM & ORDER</u>
            -against-                   13-CV-1284(JS)(SIL)

NORTH SHORE-LONG ISLAND
JEWISH HEALTH SYSTEM,

                    Defendant.
----------------------------------X
APPEARANCES
For Plaintiff:      Louis D. Stober, Jr., Esq.
                    Albina Kataeva, Esq.
                    Law Offices of Louis D. Stober, Jr., LLC
                    350 Old Country Road, Suite 205
                    Garden City, NY 11530

For Defendants:     Christopher G. Gegwich, Esq.
                    Alexander Elliott Gallin, Esq.
                    Nixon Peabody LLP
                    50 Jericho Quadrangle, Suite 300
                    Jericho, NY 11753

SEYBERT, District Judge:

        Presently pending before the Court is defendant North
Shore-Long Island Jewish Health System's ("LIJ" or "Defendant")
motion to dismiss plaintiff Ann Marie Kelly's ("Plaintiff")
Amended Complaint pursuant to Federal Rule of Civil Procedure
12(b)(1) and (b)(6).  (Defs.' Mot., Docket Entry 19.)  For the
following reasons, Defendant's Motion is GRANTED IN PART and DENIED
IN PART.

I.  <u>Factual Background</u>

The Court assumes familiarity with the background of this case, which is set forth in the Memorandum and Order dated June 22, 2014.  Kelly v. North Shore-Long Island Health Sys., No. 13-CV-1284, 2014 WL 2863020 (E.D.N.Y. Jun. 22, 2014).  Plaintiff is a registered nurse who worked for LIJ as a part-time "field registered nurse" from February 2008 until her resignation on August 17, 2011.  (Am. Compl., Docket Entry 16, ¶¶ 8, 23, 117.) Plaintiff also worked as a registered nurse for Nassau Health Care Corporation ("NHCC").  (Am. Compl. ¶¶ 20, 37.)

In March 2011, Plaintiff submitted retirement documents to NHCC.  (Am. Compl. ¶ 25.)  On March 26, 2011, Plaintiff fell and injured her back while on vacation in Mexico.  (Am. Compl. ¶ 26.)  Plaintiff exacerbated the injury when she helped her friend and another individual out of the water after a jet-ski accident. (Am. Compl. ¶¶ 27, 28.)  Plaintiff alleges that she was in a significant amount of pain and purchased morphine, which is legal to purchase and use in Mexico without a prescription.  (Am. Compl. ¶ 28.)

---

[1] The following facts are taken from Plaintiff's Amended Complaint and are presumed to be true for the purposes of this Memorandum and Order.

In April, 2011, NHCC subjected Plaintiff to a random drug test that returned a positive result for morphine sulfate. (Am. Compl. ¶¶ 30-31.) NHCC then reported Plaintiff to the Office of Professional Discipline ("OPD"). (Am. Compl. ¶ 32.) Plaintiff spoke with an investigator from OPD in late April 2011. (Am. Compl. ¶ 51.) OPD did not impose sanctions against Plaintiff and "found that she was not a threat to patients and could continue to see and treat patients." (Am. Compl. ¶ 52.) Plaintiff was advised that OPD "could not inform LIJ of the circumstances surrounding the investigation because they were not the reporting party or the party involved in the investigation." (Am. Compl. ¶ 53.) Plaintiff retired from NHCC in or about April 2011. (Am. Compl. ¶ 37.)

Plaintiff is a recovering alcoholic who consumed significant amounts of alcohol when she was off-duty and not scheduled to work the following day. (Am. Compl. ¶¶ 56-57.) Plaintiff's alcoholism substantially limited her ability to perform activities like walking, talking, eating, and standing for extended periods of time. (Am. Compl. ¶ 59.) Plaintiff admitted she was an alcoholic, joined a support group sponsored by the Statewide Peer Assistance for Nurses program, and attended Alcoholics Anonymous meetings three times per week. (Am. Compl. ¶¶ 39, 62.) Additionally, "[t]o address the positive test result and address any potential or perceived substance abuse issues,

[Plaintiff] voluntarily entered the Employee Assistance Program at NHCC and the Kenneth Peters Rehabilitation Center in Syosset." (Am. Compl. ¶ 36.) Plaintiff also voluntarily applied for a spot in the Professional Assistance Program ("PAP"), a program run by the State of New York that "assists professionals who have substance abuse problems but who have not harmed patients or clients." (Compl. ¶¶ 39-41.) Participants in PAP voluntarily surrender their licenses during their treatment instead of facing professional misconduct charges. (Am. Compl. ¶¶ 41, 44.)

Plaintiff alleges that in or about April 2011, she advised her LIJ Nursing Supervisor, Diane Asquino ("Asquino"), of her positive drug test results "[t]hough she was under no obligation to do so." (Am. Compl. ¶ 33.) Plaintiff explained why her drug test was positive and "that she was taking all necessary steps to successfully continue her career as a Registered Nurse." (Am. Compl. ¶ 34.) Plaintiff also advised Asquino that she was undergoing treatment for substance abuse, which Asquino reported to the Director of Nursing, Barbara Maidhoff ("Maidhoff"). (Am. Compl. ¶¶ 48-49.) Plaintiff believes that Maidhoff reported this information to Maria Caravello ("Caravello"), who worked in LIJ's human resources department. (Am. Compl. ¶ 50.)[2]

---

[2] The Court notes that the Amended Complaint refers to an LIJ human resources employee as both "Maria Covello" and "Maria Caravello." The Court assumes Plaintiff is referring to one

4

In or about May 2011, Plaintiff began speaking with an assigned PAP case manager, Bonnie Lochner ("Lochner"), regarding the requirements for her participation in the program. (Am. Compl. ¶ 63.) Lochner advised that Plaintiff needed to be sober for three months, at which time PAP would need Plaintiff's job description and LIJ's "policy on handling narcotics." (Am. Compl. ¶ 64.) On or about June 23, 2011, after three months of sobriety, Plaintiff spoke with Maidhoff to request a copy of her job description and LIJ's narcotics policy. (Am. Compl. ¶ 65.) Maidhoff requested that Lochner e-mail her directly to obtain that information. (Am. Compl. ¶ 66.) Plaintiff advised Lochner of Maidhoff's request and Lochner subsequently contacted Maidhoff. (Am. Compl. ¶ 67.) Plaintiff indicated to her supervisors that she would be meeting with PAP to determine whether she would be accepted into the program. (Am. Compl. ¶ 68.)

From April 2011 through July 1, 2011, Plaintiff continued to work for LIJ and interacted with patients, administered medication, and performed her duties. (Am. Compl. ¶ 54.) No complaints were made with respect to Plaintiff's performance from April through July 2011. (Am. Compl. ¶ 55.)

On or about June 29, 2011, Caravello inquired about Plaintiff's availability for a meeting with LIJ's Associate

individual. For east of reference, the Court will refer to this individual as "Maria Caravello" throughout.

Executive Director of Human Resources, Robert Sabatino
("Sabatino"), to "discuss and learn more about the PAP program."
(Am. Compl. ¶¶ 69, 72.) Plaintiff asked if she should be
represented during the meeting and Sabatino advised that it would
just be a "friendly chat." (Am. Compl. ¶¶ 70-71.) On July 1,
2011, Plaintiff met with Caravello and Sabatino. (Am. Compl.
¶ 73.) Plaintiff alleges that she explained the events that
occurred in Mexico and also explained that she was a recovering
alcoholic. (Am. Compl. ¶¶ 74-76.) Caravello called Plaintiff
approximately two hours later and informed her that she was being
placed on administrative leave and that "she could no longer see
her patients because they were reassigned." (Am. Compl. ¶¶ 82-
83.)

In early July 2011, OPD completed its investigation of
Plaintiff's failed drug test and "determined that there were no
concerns with her ability to care for and treat patients, and that
she did not pose a risk to patients." (Am. Compl. ¶ 84.)
Thereafter, on July 12, 2011, Plaintiff went to LIJ to speak with
Sabatino. (Am. Compl. ¶¶ 85-86.) Plaintiff asked Sabatino "what
the length of her administrative leave would be and why she was so
abruptly removed from her position." (Am. Compl. ¶ 87.) According
to Plaintiff, Sabatino stated, "in sum and substance, that he was
not aware of [Plaintiff's] 'problem,' referencing her addiction to
alcohol, prior to their July 1, 2011 meeting but [since he became

aware of it], he [has to] protect the public." (Am. Compl. ¶ 88.)
However, Plaintiff advised Sabatino that OPD had already concluded
that she was "not a threat to the public or her patients." (Am.
Compl. ¶ 88.) That same day, Sabatino "confirmed via letter that
[Plaintiff] was assigned to administrative leave for an
undetermined period of time." (Am. Compl. ¶ 91.)

On July 13th, Plaintiff received "accusatory"
correspondence from Sabatino stating that she consistently made
phone calls to case managers in an attempt to discuss her
employment status.[3] (Am. Compl. ¶ 92.) The letter also "stated
that if [Plaintiff] continued to make phone calls to Home Care
Case Managers in reference to her job status, other stricter
measures would have to be put in place." (Am. Compl. ¶ 93.)
Plaintiff never made phone calls to case managers to discuss her
employment status. (Am. Compl. ¶ 94.)

On July 23, 2011, Plaintiff learned that she was accepted
into the PAP program and LIJ was notified. (Am. Compl. ¶¶ 96-97.)
On July 27, 2011, Plaintiff telephoned Sabatino and inquired as to
why she was still on administrative leave. (Am. Compl. ¶ 98.)
"[Plaintiff] explained that she felt she was being discriminated
against because she was a recovering alcoholic. She further

---

[3] The Amended Complaint does not indicate the year of the July
13th correspondence, however, the Court assumes that Plaintiff
is referring to correspondence dated July 13, 2011. (See Am.
Compl. ¶ 92.)

explained that she would not let this stand." (Am. Compl. ¶ 98.) Plaintiff also told Sabatino that she planned to "pursue this further and file a complaint" as she did not understand why she was "being treated or viewed as a 'threat.'" (Am. Compl. ¶ 99.) Thereafter, Plaintiff spoke with Lochner, who advised Plaintiff that she would speak with Sabatino about Plaintiff returning to work. (Am. Compl. ¶¶ 101-02). Plaintiff did not receive any response regarding her employment status. (Am. Compl. ¶ 103.)

On August 11, 2011, Caravello asked Plaintiff to meet with her and Sabatino to discuss a "Last Chance Agreement" that LIJ was offering to Plaintiff (the "Last Chance Agreement"). (Am. Compl. ¶ 106.) Plaintiff alleges that the Last Chance Agreement "required Plaintiff to acquiesce to its terms and sign the Agreement within eight (8) days or it would result in her automatic and immediate termination from her employment with LIJ." (Am. Compl. ¶ 107.) Plaintiff also alleges that the Last Chance Agreement contained a "full waiver and release of any and all claims that she may have against LIJ for her July 2011 suspension (when she was placed on administrative leave indefinitely)." (Am. Compl. ¶ 110.)

Subsequently, Plaintiff spoke with Caravello by telephone and expressed her hesitation about attending a meeting unrepresented. (Am. Compl. ¶ 113.) Plaintiff inquired "as to why she was receiving a last chance Agreement in August when she

candidly came to [LIJ] in April of 2011 and disclosed her positive test result from NHCC." (Am. Compl. ¶ 113.) Plaintiff alleges that she "felt compelled to choose between her job or upholding her rights." (Am. Compl. ¶ 115.) Ultimately, Plaintiff declined to attend the meeting or execute the Last Chance Agreement and instead involuntarily resigned on August 17, 2011. (Am. Compl. ¶¶ 114-118.) Plaintiff alleges that she was "constructively discharged" by LIJ. (Am. Compl. ¶ 119.)

Plaintiff believes Lochner advised LIJ that her nursing license "remained in effect and that she was able to treat patients and administer medication." (Am. Compl. ¶ 122.) However, the Amended Complaint does not specify when Lochner allegedly shared this information with LIJ.

## II. Procedural Background

### A.    Plaintiff's Administrative Complaints

On August 8, 2011, Plaintiff dual filed a pro se complaint with the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC") (hereinafter referred to as the "EEOC Complaint"). (Am. Compl. ¶ 105; Ex. H to Def.'s Decl., EEOC Compl., Docket Entry 20-8, at 8-17.)[4] The EEOC Complaint alleges that Plaintiff was discriminated against by LIJ on the basis of age, gender, and

---

[4] For ease of reference, the Court will utilize the ECF pagination in its citation to the EEOC Complaint.

disability.  (EEOC Compl. at 11.)  The EEOC Complaint also states that LIJ's act of discrimination was placing Plaintiff on administrative leave for an indeterminate amount of time, and that the most recent act of discrimination occurred on July 1, 2011 (EEOC Compl. at 9, 12.).

On November 8, 2011, Plaintiff retained counsel and filed an amendment to her NYSDHR complaint (the "Second EEOC Complaint").  (Am. Compl. ¶ 120; Ex. J to Def.'s Decl., Sec. EEOC Compl., Docket Entry 20-10.[5])  Plaintiff alleges that her Second EEOC Complaint is derived from the same facts as the EEOC Complaint and only added that she felt that LIJ further discriminated against her "because of her disability and in retaliation for complaining to [NYSDHR] regarding her disparate treatment as compared to other nurses who tested positive for substance abuse but did not make complaints and were not given last chance agreements with a full and general release."  (Am. Compl. ¶ 121.)  Like the EEOC Complaint, the Second EEOC Complaint alleged that LIJ discriminated against Plaintiff on the basis of age, gender, and disability.  (Sec. EEOC Compl. at 11.)  However, the Second EEOC Complaint included a new allegation that LIJ retaliated against Plaintiff for her having filed the EEOC Complaint.  (Sec. EEOC Compl. at 11.)

---

[5] For east of reference, the Court will utilize the ECF pagination in its citation to the Second Amended Complaint.

On February 3, 2012, NYSDHR dismissed Plaintiff's initial EEOC Complaint for lack of probable cause, (Ex. K to Def.'s Decl., Feb. 3, 2012 Decision, Docket Entry 20-11), and the EEOC subsequently adopted the findings of the NYSDHR and issued a right-to-sue letter dated March 23, 2012, (Ex. L to Def.'s Decl., Mar. 23, 2012 EEOC Ltr., Docket Entry 20-12).  On September 12, 2012, the NYSDHR dismissed Plaintiff's second complaint for lack of probable cause, (Ex. M to Def.'s Decl., Sept. 12, 2012 Decision, Docket Entry 20-13), and the EEOC subsequently adopted the findings of the NYSDHR and issued a right-to-sue letter dated December 12, 2012, (Ex. N to Def.'s Decl., Dec. 12, 2012 EEOC Ltr., Docket Entry 20-14).[6]

B.    First Motion to Dismiss

Plaintiff commenced this action on March 12, 2013, asserting claims under the Americans with Disabilities Act ("ADA"), Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 1983, 1985, 1986, and 1988, and New York State Executive Law § 290 et. seq. ("NYS Human Rights Law"), as well as state law claims for

_____

[6] Plaintiff alleges that on April 26, 2012, she received a determination of probable cause in connection with the Second EEOC Complaint.  (Am. Compl. ¶ 11.)  However, on June 22, 2012, LIJ made an application to re-open the probable cause determination and NYSDHR ultimately reversed its finding of probable cause.  (Am. Compl. ¶¶ 12, 14.)

intentional infliction of emotional harm and negligent infliction of emotional harm. (See Compl., Docket Entry 1.)

On April 2, 2013, LIJ moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6) (the "First Motion to Dismiss"). (Def.'s First Mot., Docket Entry 7.) In determining the First Motion to Dismiss, the Court noted that Plaintiff "voluntarily withdr[ew] her claims under Title VII [ ]; the [ADEA]; and 42 U.S.C. §§ 1983, 1985, 1986, and 1988." Kelly, 2014 WL 2863020, at *1, n.1. The Court denied the branch of LIJ's motion seeking dismissal of Plaintiff's ADA claims on statute of limitations grounds. Id. at *4-5. The Complaint's NYS Human Rights Law claim and claims for intentional infliction of emotional harm and negligent infliction of emotional harm were dismissed with prejudice. Id. at *11.

Plaintiff's ADA cause of action was construed as asserting a claim for disability discrimination, hostile work environment, and retaliation. The Court dismissed Plaintiff's disability discrimination claim due to her failure to demonstrate that she is disabled or that LIJ perceived her as being disabled. Id. at *6. Plaintiff's hostile work environment claim was dismissed based on her failure to exhaust administrative remedies, demonstrate that she is disabled or that LIJ perceived her as being disabled, and plausibly plead that she was subjected to a hostile work environment. Id. at *7. Plaintiff's claim that LIJ

retaliated against her for filing the EEOC Complaint by offering her the Last Chance Agreement was dismissed because "Plaintiff d[id] not allege that LIJ was aware of Plaintiff's complaint with the NYSDHR before it offered the Last Chance Agreement." Id. at *10. While the Court held that "Plaintiff should be given one final opportunity to plead her disability discrimination and retaliation claims under the ADA," Plaintiff's hostile work environment claim was dismissed with prejudice. Id. at *11.

C.  Second Motion to Dismiss

On July 22, 2014, Plaintiff filed her Amended Complaint. The Amended Complaint asserts a first cause of action for a violation of the ADA (Am. Compl. ¶¶ 123-39) and a second cause of action labeled "Count II-Violation of Title VII of the Civil Rights Act of 1964, Section 704 Retaliation."  (Am. Compl. ¶¶ 140-52.)

On September 4, 2014, LIJ moved to dismiss Plaintiff's Amended Complaint.  (Def.'s Mot.)  LIJ argues that Plaintiff's ADA discrimination claim must fail because: (1) the Amended Complaint does not plausibly plead that Plaintiff was placed on administrative leave because of her disability or perceived disability, and (2) LIJ's offer of the Last Chance Agreement cannot be considered a constructive discharge because (i) a constructive discharge claim cannot stand in the absence of a hostile work environment claim and (ii) the Last Chance Agreement was an attempt to extend Plaintiff's employment, not end it.  (Def.'s Br., Docket

Entry 21, at 7-11, 13-15.)  LIJ avers that it did not become aware that Plaintiff was under investigation by PAP or that Plaintiff's nursing license was in jeopardy until June 2011, at which time it "had an obligation to its patients, from a quality of care perspective, to take action with respect to this employee." (Def.'s Br. at 8, 10.)  Moreover, Plaintiff's attempt to infer discriminatory animus from Sabatino's statement that he was not aware of her "problem" is speculative.  (Def.'s Br. at 10.)

LIJ also argues that Plaintiff's retaliation claim must fail because the Court did not permit Plaintiff to replead a Title VII retaliation claim.  (Def.'s Br. at 16-17.)  To the extent that the Court considers Plaintiff's Title VII retaliation claim, LIJ argues that: (1) Plaintiff's alleged informal complaint to Sabatino on July 27, 2011 is not a protected activity; and (2) Plaintiff cannot demonstrate that Defendant was aware of her EEOC Complaint when it offered her the Last Chance Agreement. (Def.'s Br. 17-20.)  Additionally, LIJ alleges that Plaintiff has not exhausted her administrative remedies with respect to her alleged informal complaint to Sabatino.  (Def.'s Br. at 21-25.)

Plaintiff opposes LIJ's motion and argues that the Amended Complaint states a claim for ADA discrimination.  (Pl.'s Br., Docket Entry 24, at 4.)  Plaintiff alleges that PAP did not "investigate" her; OPD conducted an investigation to ensure that she did not pose a threat to the public.  (Pl.'s Br. at 5-6.)

While LIJ alleges that it was unaware of OPD's investigation until late June 2011, in fact, "when [Plaintiff] informed [LIJ] that she was taking all necessary steps to continue her career as a Registered Nurse it was implicit that she would join PAP and ensure that she was able to continue working as a Nurse with LIJ." (Pl.'s Br. at 5-6.) Moreover, OPD had concluded its investigation when Plaintiff met with Sabatino in July 2011 and it was only after Sabatino became aware of Plaintiff's issues with alcohol that he placed her on administrative leave. (Pl.'s Br. at 6.) Plaintiff further alleges that she was constructively discharged because she was "forced to choose between being terminated or being subjected to submitting to a last chance agreement to waive any and all her rights for the unfair and discriminatory treatment she was subjected to by LIJ." (Pl.'s Br. at 7.)

Plaintiff also argues that her retaliation claim is asserted under the ADA and her reference to Title VII is a typographical error. (Pl.'s Br. at 9, n.1.) Plaintiff avers that her July 27, 2011 conversation with Sabatino is a protected activity and that LIJ retaliated against her for making this informal complaint by offering a Last Chance Agreement that would terminate her employment if she did not sign it within eight days. (Pl.'s Br. at 10-11; Am. Compl. ¶ 107.) Plaintiff argues that she has exhausted her administrative remedies with respect to her retaliation claim, as her Second EEOC Complaint contained

allegations stemming from the same facts as her first EEOC Complaint and "added that [Plaintiff] felt she was being further discriminated against because of her perceived disability and in retaliation for informing Sabatino that she would make a formal complaint and then formally complaining to the to the NYS Division of Human Rights regarding her disparate treatment . . . ." (Pl.'s Br. at 12-13.)

In its reply, LIJ alleges that it placed Plaintiff on administrative leave after it became aware that she was being investigated by OPD and "that there was the possibility that she may not be allowed to continue practicing as a nurse." (Def.'s Reply Br., Docket Entry 26, at 3.) LIJ notes that Plaintiff's attempt to conflate the issues by alleging that LIJ's argument is undermined by its reference to "the OPD as the PAP" in its motion is a "red herring" and that irrespective of the acronym used, LIJ's decision to place Plaintiff on administrative leave was solely the result of it becoming aware the Plaintiff was under investigation and might not be able to continue her employment as a nurse. (Def.'s Reply Br. at 3, n.4.) Moreover, the Amended Complaint does not plausibly assert that LIJ knew Plaintiff was being investigated by OPD in April 2011 or that LIJ knew OPD had concluded its investigation when it placed Plaintiff on administrative leave. (Def.'s Reply Br. at 4.)

DISCUSSION

Preliminarily, the Court notes that its prior Order only provided Plaintiff with leave to replead her ADA disability discrimination and retaliation claims. Kelly, 2014 WL 2863020, at *11. Plaintiff avers that her reference to Title VII in her second cause of action is a typographical error and the Court will construe Plaintiff's second cause of action as asserting a claim for retaliation under the ADA. (Pl.'s Br. at 9, n.1.) The Court declines to construe the Amended Complaint as asserting claims for failure to accommodate or disparate treatment under the ADA in light of Plaintiff's limited permission to replead. (See Def.'s Br. at 7, n.5; 10, n.7 (arguing that to the extent Plaintiff asserts claims for failure to accommodate or disparate treatment, those claims are not viable).)

I. Legal Standard

To withstand a motion to dismiss, a complaint must contain factual allegations that "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). This plausibility standard is not a "probability requirement" and requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks and citation omitted). To that regard,

17

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks and citation omitted).

### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of demonstrating by a preponderance of the evidence that subject matter jurisdiction exists. Id. In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court "may consider evidence outside the pleadings." See Morrison v. Nat'l Austl. Bank, Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, 561 U.S. 247, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010) (citation omitted).

### B. Rule 12(b)(6)

Generally, the Court's consideration of a Rule 12(b)(6) motion to dismiss is "limited to consideration of the Complaint itself." Dechberry v. N.Y. City Fire Dep't, --- F. Supp. 3d ---, 2015 WL 4878460, at *1 (E.D.N.Y. Aug. 14, 2015) (internal quotation marks and citation omitted). However, "[a] complaint is deemed to

include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (internal quotation marks and citations omitted.) See also FED. R. CIV. P. Rule 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.") If the Court considers matters outside of the complaint in connection with a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56 . . . [and] [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. Rule 12(d).

　　　　In support of its motion to dismiss, LIJ annexes exhibits that include a document prepared by Caravello and an email from Lochner to Maidhoff dated June 23, 2011 (Ex. E); a letter from Sabatino to Plaintiff dated July 13, 2011 (Ex. F); PAP's letter to Plaintiff dated July 25, 2011 (Ex. G); and Plaintiff's August 17, 2011 resignation letter (Ex. I). (Ex. E-G and I to Def.'s Decl., Docket Entries 20-5, 20-6, 20-7, 20-9.) The Court finds that Sabatino's July 13, 2011 letter is incorporated by reference in the Amended Complaint based on Plaintiff's specific allegations regarding this correspondence; accordingly, it will be considered in connection with the determination of Defendant's Rule 12(b)(6) motion. (See Am. Compl. ¶¶ 92-94; Ex. F. to Def.'s Decl.) However,

Defendant's previously noted Exhibits F, G, and I are neither integral to the Complaint nor incorporated by reference and they will not be considered.

## C. ADA Discrimination and Retaliation Claims

Discrimination and retaliation claims under the ADA are analyzed using the McDonnell Douglas burden shifting framework. Rodriguez v. Verizon Telecom, No. 13-CV-6969, 2014 WL 6807834, at *2 (S.D.N.Y. Dec. 3, 2014). Pursuant to this framework, the plaintiff bears the initial burden of demonstrating a prima facie discrimination or retaliation case. Id. The defendant then bears the burden of establishing a "legitimate, non-discriminatory reason for its actions." Id. (citation omitted). If the defendant makes such a showing, the burden shifts back to the plaintiff to establish that the defendant's explanation is merely pretextual. Id.

However, at the pleading stage, a Complaint asserting discrimination claims "need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss." Powell v. Dep't of Educ. of City of N.Y., No. 14-CV-2363, 2015 WL 5772211, at *5 (E.D.N.Y. Sept. 30, 2015) (internal quotation marks and citation omitted). Rather, the plaintiff need only allege a plausible claim upon which relief may be granted. Id. See also Rodriguez, 2014 WL 6807834, at *6 (noting the lenient pleading requirements in discrimination

cases). With respect to employment discrimination claims, the plaintiff must plausibly assert that "'the employer took adverse action against her at least in part for a discriminatory reason' and plead facts that either directly show discrimination or give rise to a plausible inference of discrimination." Powell, 2015 WL 5772211 at *5 (quoting Vega v. Hempstead Union Free Sch. Dist., No. 14-CV-2265, 2015 WL 5127519, at *10 (2d Cir. Sept. 2, 2015)). Additionally, on a motion to dismiss courts consider the prima facie elements of a discrimination or retaliation claim to determine whether the complaint sufficiently alleges facts that, if true, provide the defendant with "fair notice of Plaintiff's claim and the grounds on which it rests." Rodriguez, 2014 WL 6807834, at *3 (internal quotation marks and citation omitted).

II. ADA Disability Discrimination Claim

The ADA prohibits discrimination against a "qualified individual on the basis of disability" in the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state a claim for discrimination under the ADA, a plaintiff must allege that: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability."

Capobianco v. City of N.Y., 422 F.3d 47, 56 (2d Cir. 2005) (citation omitted). While discriminatory intent may be inferred based on the totality of the circumstances, the plaintiff "'cannot rely solely on conclusory allegations of discrimination without any concrete evidence to support her claims.'" Sherman v. Cty. of Suffolk, 71 F. Supp. 3d 332, 347 (E.D.N.Y. 2014) (quoting Kaufman v. Columbia Mem'l Hosp., 2 F. Supp. 3d 265, 278 (N.D.N.Y. 2014)).

An "adverse employment action" is defined as a change in the terms and conditions of employment that is "materially adverse." Caskey v. Cty. of Ontario, 560 F. App'x 57, 59 (2d Cir. 2014) (internal quotation marks and citations omitted). See also Sherman, 71 F. Supp. 3d at 344 ("A materially adverse change is a change in working conditions that is more disruptive than a mere inconvenience or an alteration of job responsibilities.") (internal quotation marks and citation omitted). Examples of adverse employment actions include a termination, demotion evidenced by a wage or salary decrease, a "less distinguished title," material reduction of benefits, or a significant diminishing of the employee's material responsibilities. Id. However, an individual's "bruised ego," reassignment to a position that is more inconvenient, or demotion that does not include a change in responsibilities, benefits, compensation, or prestige do not constitute material adverse employment actions. Hong Yin v.

North Shore LIJ Health Sys., 20 F. Supp. 3d 359, 373 (E.D.N.Y. 2014).

The Court construes the Amended Complaint as asserting an ADA discrimination claim based on two alleged material adverse employment actions: (1) Defendant placing Plaintiff on administrative leave; and (2) Defendant's alleged constructive discharge of Plaintiff by offering her the Last Chance Agreement. LIJ does not argue that it is not covered by the ADA, Plaintiff does not suffer from a disability, Plaintiff was not qualified to perform her job, or that Plaintiff's administrative leave was not an adverse employment action. Instead, LIJ asserts that Plaintiff fails to plausibly plead that she was placed on administrative leave "due to her disability or perceived disability" and that Plaintiff's claim of constructive discharge fails in the absence of a hostile work environment. (Def.'s Br. at 8, 11-12.)

A.    Administrative Leave

Whether an ADA plaintiff is required to demonstrate that the subject disability discrimination was a "but-for cause" of the defendant's adverse employment action is an open question in the Second Circuit. Vale v. Great Neck Water Pollution Control Dist., 80 F. Supp. 3d 426, 436-37 (E.D.N.Y. 2015). Compare Parker v. Columbia Pictures Indus., 204 F.3d 326, 337 (2d Cir. 2000) (Holding that an ADA plaintiff is only required to establish that "disability played a motivating role in the [adverse employment]

decision.") with Gross v. FBL Fin. Servs. Inc., 557 U.S. 167, 177-78, 129 S. Ct. 2343, 2351, 174 L. Ed. 2d 119 (2009) (Holding that an ADEA disparate-treatment plaintiff must demonstrate "that age was the 'but-for' cause of the challenged employer decision.") and Univ. of Tex. SW Med. Ctr. v. Nassar, --- U.S. ----, 133 S. Ct. 2517, 2534, 186 L. Ed. 2d 503 (2013) (Holding that a plaintiff asserting a Title VII retaliation claim must establish "that his or her protected activity was a but-for cause of the alleged adverse action by the employer."). See also Sherman, 71 F. Supp. 3d at 347-49 (discussing the "open question" of the causation standard for ADA discrimination claims in the Second Circuit and noting that other circuit courts have applied a "but-for" standard to ADA claims). But see Baron v. Advanced Asset and Property Mgmt. Solutions, LLC, 15 F. Supp. 3d 274, 280, n.2 (E.D.N.Y. 2014) (Declining to extend Gross to ADA actions absent Second Circuit guidance and applying the "motivating factor" standard.).

The Court need not determine the appropriate causation standard for ADA discrimination claims as Plaintiff has alleged sufficient facts to plead that she was placed on administrative leave because of her disability under either the "motivating factor" or "but-for" standard. The Amended Complaint alleges that on July 1, 2011, Plaintiff met with Sabatino and Caravello and explained: (1) the events in Mexico that resulted in her testing positive for morphine; (2) that she was a recovering alcoholic and

24

was involved in several programs, including Alcoholics Anonymous and the Kenneth Peters Rehabilitation Center; and (3) that she had been sober for three months and was qualified to participate in the PAP program. (Am. Compl. ¶¶ 73-79.) Approximately two hours after that meeting, Caravello called Plaintiff and advised her that she was on administrative leave "until further notice." (Am. Compl. ¶ 82.) Here, the temporal proximity of Plaintiff being placed on administrative leave within approximately two hours of advising Sabatino that she was a recovering alcoholic raises a plausible inference of discrimination. Vale, 80 F. Supp. 3d at 437 (Temporal proximity suffices to raise an inference of discrimination and state a plausible employment discrimination claim.). Accord Baron 15 F. Supp. 3d at 283.

LIJ argues that it placed Plaintiff on administrative leave as a result of her inconsistent statements regarding the circumstances surrounding her injury in Mexico and the fact that she was under investigation and "her nursing license was in jeopardy." (Def.'s Br. at 9.) LIJ cites to Sabatino's July 13, 2011 letter to Plaintiff, which states, in relevant part: "based on the information you voluntarily shared with us during the July 1, meeting, a decision was made to place you on Administrative Leave effective immediately pending further investigation (including, without limitation, receipt of further information from [OPD] concerning the status of your ability to practice as a

Home Care Nurse)." (Ex. F to Def.'s Decl.) However, this correspondence--which vaguely states that Plaintiff shared information without specifying the particular information that informed LIJ's decision to place Plaintiff on administrative leave--does not conclusively establish that Plaintiff was placed on administrative leave because her nursing license was in jeopardy and further fact discovery is warranted on this issue.

While the Court is not persuaded by Plaintiff's argument that LIJ was aware of the OPD investigation as early as April 2011 because such information was "implicit" when Plaintiff informed LIJ that she was "taking all necessary steps to continue her career as a Registered Nurse," the Amended Complaint indicates that Plaintiff remained on indefinite administrative leave after she advised Sabatino on July 12, 2011 that OPD had concluded that she did not pose any patient care concerns. (Pl.'s Br. at 5-6; Am. Compl. ¶¶ 34, 85, 88, 91.) Additionally, the Amended Complaint asserts that when Plaintiff asked Sabatino how long her administrative leave would be and why she was "abruptly" removed from her position, Sabatino replied, "in sum and substance, that he was not aware of [Plaintiff's] 'problem,' referencing her addition to alcohol, prior to their July 1, 2011 meeting but now that he is, he must protect the public." (Am. Compl. ¶¶ 87, 88.) Although Defendant argues that Sabatino's alleged use of the word "problem" is a reference to the pending investigation and potential

loss of Plaintiff's nursing license, Plaintiff's allegation that Sabtino was referring to her alcoholism suffices to plausibly plead discriminatory intent. (Def.'s Br. at 10.)

Accordingly, the branch of Defendant's motion seeking the dismissal of Plaintiff's ADA discrimination claim regarding her placement on administrative leave is DENIED.

B. <u>Constructive Discharge</u>

A constructive discharge takes place "when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." <u>Caskey</u>, 560 F. App'x at 58-59 (internal quotation marks and citation omitted). "Working conditions are sufficiently intolerable when they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." <u>Giambattista v. Am. Airlines, Inc.</u>, 5 F. Supp. 3d 284, 292 (E.D.N.Y. 2014) (internal quotation marks and citation omitted) (Holding that plaintiff failed to demonstrate that a "constructive suspension" constituted an adverse employment action under the ADA and NYSHRL where the complaint did not plausibly allege specific conduct by the defendant that rendered the plaintiff's working conditions intolerable.). The standard to establish a constructive discharge is high and requires that the employer's deliberate action constitute "'something beyond mere negligence or

ineffectiveness.'" Adams v. Festival Fun Parks, LLC, 560 F. App'x 47, 49-50 (2d Cir. 2014) (quoting Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 74 (2d Cir. 2000)).

This District has held that an ADA constructive discharge claim must fail where the plaintiff does not establish a hostile work environment claim. Hong Yin, 20 F. Supp. 3d at 374. See also Murphy v. BeavEx, Inc., 544 F. Supp. 2d 139, 153-54 (D. Conn. 2008) (Holding that "[plaintiff] has not brought forth sufficient evidence to support a hostile work environment claim. Therefore any allegation of a constructive discharge must also fail."). Cf. O'Neal v. State Univ. of N.Y., No. 01-CV-7802, 2006 WL 3246935, at *12 (E.D.N.Y. Nov. 8, 2006) (Noting, in the context of a gender discrimination claim, that "constructive discharge is a 'worst case' harassment scenario, a hostile working environment 'ratcheted up to the breaking point,'" and holding that plaintiff's constructive discharge claim must fail based on her failure to demonstrate a hostile work environment.) (quoting Penn. State Police v. Suders, 542 U.S. 129, 147, 124 S. Ct. 2342, 2355, 159 L. Ed. 2d 204 (2004)).

This Court has already dismissed Plaintiff's hostile work environment claim with prejudice and, accordingly, her constructive discharge claim must fail. See Kelly, 2014 WL 2863020, at *11; Hong Yin, 20 F. Supp. 3d at 374. In any event, the Amended Complaint does not plausibly allege that Plaintiff's

working conditions were so intolerable that a reasonable person would have felt compelled to resign. Caskey, 560 F. App'x at 58-59. Accordingly, the branch of Defendant's motion seeking the dismissal of Plaintiff's ADA discrimination claim regarding her alleged constructive discharge is GRANTED.

III. ADA Retaliation Claim

The Court construes the Amended Complaint as setting forth two bases for an ADA retaliation claim: (1) that LIJ retaliated against Plaintiff for statements made during her July 27, 2011 phone call with Sabatino; and (2) that LIJ retaliated against Plaintiff for filing her EEOC Complaint.

A. July 27, 2011 Complaint

Defendant argues that the Court lacks subject matter jurisdiction with respect to Plaintiff's allegations regarding her July 27, 2011 telephone call with Sabatino (the "July 27th Call") based on her failure to exhaust administrative remedies. (Def.'s Br. at 21.) The Court agrees.

The ADA requires that a plaintiff exhaust all available administrative remedies before filing an employment discrimination action. Manello v. Nationwide Mut. Ins. Co., No. 11-CV-0243, 2012 WL 3861236, at *8 (E.D.N.Y. Sept. 4, 2012). Claims that were not alleged in an EEOC charge may only be pursued in a federal action where they are "reasonably related" to the claims filed with the EEOC. Id. at *9 (internal quotation marks and citation omitted).

Particularly, the three types of "reasonably related" claims are: "(1) claims that 'fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination'; (2) claims that allege retaliation for filing an EEOC charge; and (3) claims that allege 'further incidents of discrimination carried out in [precisely] the same manner alleged in the EEOC charge.'" Id. (quoting Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir. 2003) (alteration in original)).

The primary inquiry is whether the plaintiff's EEOC complaint provided that agency with "adequate notice to investigate discrimination on both bases." Ceslik v. Miller Ford, Inc., 584 F. Supp. 2d 433, 441-42 (D. Conn. 2008) (internal quotation marks and citation omitted) (Noting that "[o]ne could not reasonably expect that an ADA claim concerning an asthmatic condition or a sexual harassment claim under Title VII would give notice about claims concerning all disabilities or all discrimination."). See also Hoffman v. Williamsville Sch. Dist., 443 F. App'x, 647, 649 (2d Cir. 2011) (Holding, in the context of a Title VII claim, that "[a]n allegation not set forth in an administrative charge will be barred as unexhausted unless it is reasonably related to the allegations in the charge."); Williams v. N.Y. City Housing Auth., 458 F.3d 67, 70 (2d Cir. 2006) (Stating that the focus of an inquiry as to whether a claim is "reasonably related" to an EEOC charge "should be on the factual allegations

made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.") (internal quotation marks and citation omitted; alteration in original).

As previously noted, the Amended Complaint alleges that during the July 27th Call, Plaintiff told Sabatino that she felt discriminated against because she was a recovering alcoholic and that she planned to "pursue this further and file a complaint." (Am. Compl. ¶¶ 98-99.)  Plaintiff further alleges that Defendant retaliated against her for making this informal complaint and for making the EEOC Complaint by presenting her with the Last Chance Agreement.  (Am. Compl. ¶¶ 146, 148.)

However, Plaintiff's EEOC Complaint and Second EEOC Complaint are silent with respect to the July 27th Call.  (See generally EEOC Compl.; Sec. EEOC Compl.)[7]  The first EEOC Complaint alleges that LIJ's act of discrimination was placing Plaintiff on leave for an indeterminate amount of time and that the most recent act of discrimination occurred on July 1, 2011.  (EEOC Compl. at 9, 12.)  The EEOC Complaint only asserts a claim for discrimination and contains no allegations of retaliation by LIJ.  (See generally EEOC Compl.)  The Second EEOC Complaint details, in relevant part,

---

[7] The Court will consider the EEOC Complaint and Second EEOC Complaint with respect to LIJ's subject matter jurisdiction arguments based on its discretion to look to evidence outside of the pleadings on a Rule 12(b)(1) motion.  See Morrison, 547 F.3d at 170.

Plaintiff's July 1, 2011 meeting with Sabatino and Caravello; Plaintiff's July 12, 2011 conversation with Sabatino where she asked about the length of her administrative leave and Sabatino indicated that he was not previously aware of Plaintiff's "problem"; and Sabatino's July 13, 2011 letter. (Sec. EEOC Compl. at 10-11.) The Second EEOC Complaint also alleges that on August 8, 2011, Plaintiff filed the EEOC Complaint; on August 11, 2011, Caravello asked Plaintiff if she would meet with her and Sabatino to sign the Last Chance Agreement; that Plaintiff refused to sign the agreement; and "[o]n August 17, 2011 as a result of [Defendant]'s discriminatory and retaliatory treatment [Plaintiff] felt compelled to resign from her employment with [Defendant], which was tantamount to a constructive discharge." (Sec. EEOC Compl. at 11.)

Although Plaintiff appears to argue that her allegations regarding the July 27th Call relate to the Second EEOC Complaint because that complaint "added that [Plaintiff] felt she was being further discriminated against because of her perceived disability and in retaliation for informing Sabatino that she would make a formal complaint," the Court is not persuaded as neither EEOC complaint contains any allegation that Plaintiff informed Sabatino of her intention to file a formal complaint. (Pl.'s Br. at 12-13.) As neither EEOC complaint contains allegations that Plaintiff complained to LIJ that she felt discriminated against or that she

threatened to file a formal complaint, Plaintiff's EEOC complaints fail to provide the EEOC with adequate notice to investigate a claim for retaliation in connection with the July 27th Call. Accordingly, the branch of Defendant's motion seeking the dismissal of Plaintiff's claim for retaliation based on the July 27th Call is GRANTED.

B.   August 8, 2011 EEOC Complaint

This Court previously dismissed Plaintiff's claim that LIJ retaliated against her for filing the EEOC Complaint by presenting her with the Last Chance Agreement because "Plaintiff d[id] not allege that LIJ was aware of Plaintiff's complaint with the NYSDHR before it offered the Last Chance Agreement." Kelly, 2014 WL 2863020 at *10.   The Amended Complaint fails to remedy this defect and does not allege that LIJ was aware of the EEOC Complaint before it offered the Last Chance Agreement.   (See generally Am. Compl.)   Accordingly, the branch of Defendant's motion seeking to dismiss Plaintiff's retaliation claim regarding the EEOC Complaint is GRANTED for the same reasons set forth in the Court's Memorandum and Order dated June 22, 2014.

IV.  Leave to Replead

Although the Court's general practice is to grant leave to amend the complaint when grating a motion to dismiss, "the district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint

that a valid claim might be stated." <u>Hayden v. County of Nassau</u>, 180 F.3d 42, 53 (2d Cir. 1999); <u>Perri v. Bloomberg</u>, No. 11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012). Plaintiff has already been permitted one opportunity replead and the Court finds that additional leave to replead Plaintiff's ADA discrimination claim based on constructive discharge and ADA retaliation claim based on her filing the EEOC Complaint would be futile. As the Court does not possess subject matter jurisdiction over Plaintiff's ADA retaliation claim based on the July 27th Call, that claim must be dismissed without prejudice. <u>See JetBlue Airways Corp. v. CopyTele Inc.</u>, --- F. App'x ---, 2015 WL 6161774, at *1 (2d Cir. Oct. 21, 2015) ("'Article III deprives federal courts of the power to dismiss a case with prejudice where federal subject matter jurisdiction does not exist.'") (quoting <u>Hernandez v. Conriv Realty Assocs.</u>, 182 F.3d 121, 123 (2d Cir. 1999)).

CONCLUSION

For the foregoing reasons, Defendant's motion is GRANTED IN PART and DENIED IN PART. Plaintiff's claim for ADA discrimination based on constructive discharge is DISMISSED WITH PREJUDICE. Plaintiff's claims for ADA retaliation based on her filing of the EEOC Complaint is DISMISSED WITH PREJUDICE. Plaintiff's claim for ADA retaliation based on the July 27th Call is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. Plaintiff's remaining claim is for ADA

discrimination based on Defendant placing her on administrative leave.

                              SO ORDERED.


                              /s/ JOANNA SEYBERT
                              Joanna Seybert, U.S.D.J.

Dated:    January __15__, 2016
          Central Islip, New York